IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**MAGNESS OIL COMPANY,**                                                                                             **PLAINTIFFS**
**M PROPERTIES LLC, and**
**MAGNESS FAMILY LIMITED**
**PARTNERSHIP LLP**

V.                           **CASE NO. 3:21-CV-03034**

**MOUNTAIN EXPRESS OIL**
**COMPANY and SCF RC FUNDING**
**IV LLC**                                                                                            **DEFENDANTS**

## OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER

This matter is before the Court on the Motion of Plaintiffs Magness Oil Company, M Properties LLC, and Magness Family Limited Partnership LLP for Temporary Restraining Order and Preliminary Injunction (Doc. 3). Separate Defendant SCF RC Funding IV LLC ("SCF") has responded (Doc. 10). While Plaintiffs have requested a hearing, the Court finds one unnecessary to resolve the Motion to the extent it requests a temporary restraining order. For the reasons that follow, the Court **DENIES** the Motion (Doc. 3) as to a temporary restraining order.

### I. BACKGROUND

This action arises out of a dispute between the parties regarding the ownership of underground storage tanks ("USTs"), fuel pumps, fuel canopies, and fuel brand signage at nine convenience stores throughout Arkansas (the "Disputed Stores").[1] Magness Oil

---

[1] In ruling on the Motion, the Court has considered the facts alleged in Plaintiffs' Verified Complaint (Doc. 2), Plaintiff's Motion and Memorandum of Law in Support (Docs. 3 & 4), SCF's Response (Doc. 10), and the exhibits attached thereto.

is a wholesale fuel provider, and Plaintiffs owned certain real estate interests in the Disputed Stores, including USTs, fuel pumps, and fuel canopies. (Doc. 2, at pp. 3–4). Plaintiffs leased these Disputed Stores to store operators, and each of the operators executed a fuel agreement with Magness Oil allowing Magness Oil to supply the store with fuel products. *Id.* at p. 4. Moreover, Magness Oil signed long-term agreements with "fuel brand suppliers" like Valero and Citgo to provide the fuel for the stores and for signage rights. *Id.*

Pursuant to an Asset Purchase Agreement ("APA") dated February 22, 2019, Plaintiffs sold their interests (both fee interests and leasehold interests) in 48 convenience stores (including the Disputed Stores) to U.S. Assets, Inc. ("U.S. Assets"), a non-party to this action. *Id.* at pp. 21, 45. The particulars of the APA are in dispute, but the general outlines of the deal are clear. Plaintiffs agreed to "sell, convey, transfer, assign, and deliver the 'Purchased Assets'" to U.S. Assets for the sum of $50,000,000. *Id.* at pp. 21–22. As relevant, in Section 3.01, the APA defines "Purchased Assets" as:

- "[a]ll owned Real Property,"[2]

- "[a]ll furniture, fixtures, equipment, and spare parts, including, but not limited to . . . counters and signage; **all tanks, lines, pumps, and canopies** . . . together with all replacements thereof and additions thereto,"

- "[t]o the extent assignable and expressly assumed by Buyer, all rights and benefits of Seller under any applicable policy or policies covering any Environmental Liabilities of the Store and Real Property,"

- "proceeds from any state [Leaking Underground Storage Tank] fund,"

---

[2] The APA defines "Real Property" as those 48 convenience stores listed on Schedule 1 of the APA. *Id.* at pp. 39, 45. The Disputed Stores are included on that list.

2

- "[l]eases with operators," and
- "[g]round leases."

*Id.* at pp. 25–26 (emphasis added).  Confusingly, the APA specifies that Plaintiffs did not intend to sell U.S. Assets "[t]hose items described on Schedule 4," and Schedule 4 lists as excluded assets:  "ANY AND ALL FUEL EQUIPMENT," including "all UST[s]," "Fuel Pumps," "Fuel Canopies," and "Fuel Brand Signage" "[l]ocated at all locations."  *Id.* at p. 48.  In short, Section 3.01 and Schedule 4 appear to contradict each other.

The APA also contains provisions governing U.S. Asset's assumption of forward-looking liabilities arising out of the purchased stores.  For example, the parties agreed that U.S. Assets would assume certain environmental liabilities:

> SELLER IS HEREBY RELEASED FROM, AND [U.S. Assets] HEREBY ASSUMES, ALL RESPONSIBILITY AND LIABILITY REGARDING THE PRESENCE IN THE SOIL, AIR, STRUCTURES, AND SUBSURFACE AND SURFACE WATERS, OF MATERIALS OR SUBSTANCES THAT HAVE BEEN OR MAY IN THE FUTURE BE DETERMINED TO BE TOXIC, HAZARDOUS, OR THE SUBJECT OF REGULATION . . . . [U.S. Assets] SHALL INDEMNIFY AND HOLD HARMLESS SELLER FROM ANY AND ALL CLAIMS ARISING FROM OR RELATED TO THE PRESENCE OF SUCH MATERIALS OR SUBSTANCES . . . PROVIDED HOWEVER THAT SELLER IS, AND SHALL REMAIN, LIABLE FOR ALL ENVIRONMENTAL LIABILITIES THAT AROSE PRIOR TO OR ON THE CLOSING DATE.

*Id.* at pp. 33–34 (capitalization in original).

Plaintiffs assert that U.S. Assets did not close on all of the 48 stores simultaneously, but instead closed on various dates as U.S. Assets acquired the necessary financing.  *Id.* at p. 6.  Plaintiffs also assert that SCF financed U.S. Asset's purchase of the convenience stores.  *Id.* at p. 7.  In March 2021, Plaintiffs purportedly

learned that SCF acquired U.S. Asset's interest in the Disputed Stores due to a default by U.S. Assets. *Id.* at p. 7.[3]

Plaintiffs assert that they continue to own the USTs, fuel pumps, fuel canopies, and fuel brand signage at the Disputed Stores. Moreover, they allege that, beginning in March 2021, Defendants began converting Plaintiffs' property at the Disputed Stores. *Id.* at p. 8. Specifically, Plaintiffs contend that Defendants have prevented them from accessing the USTs and fuel pumps, removed fuel brand signage on the fuel canopies and fuel pumps, and changed the credit card and electronic funds payment destination to separate defendant Mountain Express Oil Company. Additionally, Defendants have allegedly informed Plaintiffs that the Disputed Stores will no longer honor the fuel agreements previously made with Magness Oil.

The parties could not reach an amicable solution, so Plaintiffs simultaneously filed their Complaint and Motion on May 5, 2021.[4] Plaintiffs bring claims for conversion, tortious interference with a contract, and tortious interference with a business relationship. Plaintiffs seek monetary damages and a declaration that the Plaintiffs remain the rightful owners of the USTs, fuel pumps, fuel canopies, and fuel brand signage. Finally, Plaintiffs

---

[3] This is inconsistent with the asset purchase agreements attached to SCF's Response. *See* Doc 10-1, pp. 1–71. According to these agreements, it appears SCF purchased eight of the nine disputed stores in two separate transactions in April and July 2019. Neither of these agreements show that SCF purchased the Disputed Store located at 101 N. Hobbs Street, Alpena, Arkansas. Clearly, there is significant confusion regarding who owns each Disputed Store (and associated fuel systems) and how such ownership came to be. The Court hopes that the parties can resolve this confusion at the preliminary injunction hearing.

[4] Plaintiffs originally filed this case in the Eastern District of Arkansas. The Honorable Judge Lee Rudofsky transferred the case to this Court two days later because "[e]ight of the nine currently disputed properties are located in the Western District of Arkansas." (Doc. 12).

request a temporary restraining order to enjoin Defendants from violating Plaintiffs' rights to the USTs, fuel pumps, fuel canopies, and fuel brand signage.

## II.  DISCUSSION

Plaintiffs move for a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure.  "It is well-established under federal law that a temporary restraining order is an extraordinary remedy which should only be issued in exceptional circumstances."  *Zidon v. Pickerell*, 338 F. Supp. 2d 1093, 1094–95 (D.N.D. 2004) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  District courts have broad discretion when deciding whether to grant a request for a temporary restraining order.  *Powell v. Noble*, 36 F. Supp. 3d 818, 829 (S.D. Iowa 2014).  To guide that discretion, district courts use the *Dataphase* factors to determine whether a temporary restraining order should issue:  "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  *Dataphase Sys., Inc. v. C L Sys., Inc.* 640 F.2d 109, 114 (8th Cir. 1981).  The movant has the burden of establishing the necessity of a temporary restraining order.  *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

Based upon the limited evidence presented, the Court finds that Plaintiffs have failed to "demonstrate that irreparable [harm] is *likely* in the absence of an injunction."  *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 992 (8th Cir. 2011) (emphasis in original).  "Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm."  *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011).  In fact, the lack of irreparable

harm is "an independently sufficient ground upon which to deny" an injunction. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

Here, the harm suffered by Plaintiffs stems from interference with their alleged property rights to certain fuel systems at the Disputed Stores, including the right to sell fuel to those stores as well as preventing Plaintiffs from honoring their long-term fuel agreements with third parties like Citgo and Valero. If true, these harms may be substantial; still, based upon the limited record before the Court, it appears that those harms are financial in nature and remediable via a monetary judgment. Such harms typically do not justify immediate injunctive relief. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."); *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986) (holding that recoverable monetary loss may constitute irreparable harm "only where the loss threatens the very existence of the [petitioner's] business").

On the other hand, Plaintiffs do allege a harm to their goodwill and reputation, and the Eighth Circuit has held that such injuries sometimes qualify as "irreparable." *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737, 741 (8th Cir. 2002). However, based upon the limited record before it, the Court cannot determine the extent of the harm to Plaintiffs' reputation if Defendants are not enjoined. Thus, the Court finds that Plaintiffs have not adequately demonstrated that, in the absence of an emergency relief, it is likely that they will suffer irreparable harm.

While Plaintiffs' failure to demonstrate an irreparable harm is sufficient grounds to deny their request for a temporary restraining order, the Court also finds that Plaintiffs

have failed to show that they have a fair chance of prevailing on the merits. *See D.M. by Bao Xiong v. Minn. State High School League*, 917 F.3d 994, 999 (8th Cir. 2019) (noting that the likelihood of success on the merits prong only requires the party seeking injunctive relief to show a "fair chance of prevailing"). The APA contains an obvious contradiction on the central point at issue: Section 3.01(b) says that Plaintiffs intended to convey the fuel systems, canopies, and signage at the Disputed Stores to U.S. Assets, while Schedule 4 says that Plaintiffs did not intend to transfer those items. Plaintiffs do not explain these contractual contradictions. Furthermore, the APA explicitly provides that U.S. Assets would be liable for certain environmental liabilities after closing, which is consistent with a sale of the fuel systems to U.S. Assets. In sum, it is unclear to the Court whether Plaintiffs continue to own the fuel systems at the Disputed Stores, so the Court cannot say at this time that Plaintiffs have demonstrated a fair chance of prevailing on the merits.

Finally, the Court declines to issue a temporary restraining order because it is uncertain of its subject-matter jurisdiction over this matter. Plaintiffs assert federal diversity jurisdiction under 28 U.S.C. § 1332, and diversity jurisdiction "requires an amount in controversy greater than $75,000 and complete diversity of citizenship among the litigants." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) (citing 28 U.S.C. § 1332(a)). The party invoking federal diversity jurisdiction must prove by a preponderance of the evidence that "it does not appear to a legal certainty that the claim for relief" is for $75,000 or less. *Kopp v. Kopp*, 280 F.3d 833, 885 (8th Cir. 2002). As for the citizenship of the parties, as relevant here, "[t]he citizenship of non-incorporated entities like limited liability companies depends on the citizenship of their members." *Jet*

*Midwest Int'l Co., Ltd v. Jet Midwest Group, LLC*, 932 F.3d 1102, 1104 (8th Cir. 2019) (citation omitted).

Presently, two issues cause the Court to question its subject-matter jurisdiction. First, it appears Plaintiffs may have failed to plead a specific amount of damages over-and-above the jurisdictional minimum. Second, two opposing parties (M Properties LLC and SCF) are unincorporated associations. The citizenship of the members of M Properties LLC is unknown. As for SCF, Plaintiffs allege that it has only one member, Essential Properties, LP, but the Court has no information about the citizenship of the members of Essential Properties, LP.[5] Accordingly, there is a non-negligible chance that complete diversity does not exist. While Plaintiffs may later show that the amount-in-controversy and complete diversity requirements are satisfied, the Court hesitates to grant emergency injunctive relief while its subject-matter jurisdiction has yet to be established on the face of the limited record before the Court.

### III. CONCLUSION

In light of the foregoing analysis, **IT IS ORDERED** that Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 3) is **DENIED** to the extent it seeks a temporary restraining order under Rule 65(b). The Court will hold an evidentiary hearing on the request for a preliminary injunction on **June 28, 2021, at 9:30 a.m.** The Court will hold that hearing in the fifth-floor courtroom in Fayetteville, Arkansas.

---

[5] Like limited liability companies, limited partnerships derive their citizenship from the citizenship of their members. *GMAC Com. Credit LLC v. Dillard Dep't. Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004) (discussing *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)).

**IT IS SO ORDERED** on this 19th day of May, 2021.

                                                            TIMOTHY L. BROOKS
                                                            UNITED STATES DISTRICT JUDGE