### IN THE UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF ARKANSAS
### HARRISON DIVISION

**MAGNESS OIL COMPANY,**                                    **PLAINTIFFS**
**M PROPERTIES LLC, and**
**MAGNESS FAMILY LIMITED**
**PARTNERSHIP LLP**

**V.**                        **CASE NO. 3:21-CV-03034**

**MOUNTAIN EXPRESS OIL**
**COMPANY and SCF RC FUNDING**
**IV LLC**                                              **DEFENDANTS**

### OPINION AND ORDER DENYING DEFENDANTS'
### MOTION TO DISMISS

This action arises out of a dispute between the parties regarding ownership of the underground storage tanks ("USTs"), fuel pumps, fuel canopies, and fuel brand signage (collectively, "the disputed equipment") located at nine Arkansas convenience stores. (Doc. 2, pp. 1–2).

On May 5, 2021, Plaintiffs Magness Oil Company, M Properties, LLC, Magness Family Limited Partnership, LLP (collectively, "Magness") filed suit against Defendants Mountain Express Oil Company ("Mountain Express") and SCF RC Funding IV, LLC ("SCF") (collectively, "Defendants").[1] Magness alleges Defendants' continued control of the disputed equipment constitutes conversion, tortious interference with a contract, and

---

[1] When describing arguments contained within the Motion to Dismiss, the Court refers to "Defendants" collectively. However, when describing conduct undertaken by only one of the Defendants, the Court will refer to the party by name.

With respect to Plaintiffs, the Complaint does not specify the relative ownership interest maintained by the individual plaintiffs. Nor does the Complaint, when describing the events at issue, make clear when a single plaintiff, as opposed to two or three plaintiffs together, undertook a particular action. For simplicity's sake, the Court assumes Plaintiffs acted as a unit and refers to them collectively as "Magness."

tortious interference with a business relationship. It seeks the following relief: (1) damages; (2) declaratory relief establishing Magness as the rightful legal owner of the disputed equipment; and (3) injunctive relief preventing Defendants from continuing to violate Magness's rights to the disputed equipment. Defendants move to dismiss Magness's suit pursuant to Federal Rule of Civil Procedure 12(b)(6), Failure to State Claim Upon Which Relief May be Granted; Rule 12(b)(1), Lack of Subject-Matter Jurisdiction; and Rule 12(b)(7), Failure to Join a Party Under Rule 19.[2] *See* Doc. 15, p. 2.

Defendants' Motion (Doc. 15), along with Defendants' Brief (Doc. 16) and Magness's Response (Doc. 21), are now before the Court. For the below reasons, Defendants' Motion to Dismiss is **DENIED**.

## I.   BACKGROUND

Magness is a wholesale fuel provider operating in Arkansas and the surrounding states. (Doc. 2, p. 2). It also owns (or controls) convenience stores, which it often leases to store operators that agree to purchase fuel and fuel products exclusively from Magness. *Id.* at pp. 3–4. Magness also holds long-term agreements with "fuel brand suppliers" like Valero and Citgo to provide the fuel for the stores and signage rights. *Id.*

The parties seem to agree on the following: Pursuant to a February 2019 Asset Purchase Agreement ("APA"), Magness sold its interest in 32 convenience stores to U.S. Assets, Inc., a nonparty to this action. *Id.* at pp. 4, 21, 45. At some point between February 2019 and March 2021, SCF acquired U.S. Assets's interest in the 32 convenience stores.

---

[2] Defendant SCF filed the Motion to Dismiss (Doc. 15) on May 14, 2021. Co-Defendant Mountain Express filed a Notice (Doc. 17) adopting SCF's Motion and supporting brief the same day. For the purpose of this Order, the Court will treat the Motion to Dismiss as if filed by both defendants.

*Id.* at 7. SCF then either sold its interest in those 32 stores to Mountain Express or hired Mountain Express to operate the stores. *Id.* Either way, by March 2021, some combination of Mountain Express and SCF—the defendants here—controlled the 32 stores. *Id.*

The present dispute concerns the particular set of assets Magness sold off in February 2019. Magness maintains the transaction with U.S. Assets excluded USTs, fuel pumps, fuel canopies, and fuel brand signage. As a result, it continues to own the disputed equipment, and Defendants' refusal to relinquish control is tortious. Defendants disagree. They contend Magness sold the disputed equipment to U.S. Assets. Thus, when U.S. Assets sold that same bundle to SCF, SCF assumed ownership of the disputed equipment.

All parties claim the February 2019 APA, properly interpreted, clearly establishes ownership. It does not. The APA, filed as an attachment to the Complaint, states that Magness agreed to "sell, convey, transfer, assign, and deliver the 'Purchased Assets'" to U.S. Assets for the sum of $50,000,000. *Id.* at pp. 21–22. As relevant, in Section 3.01, the APA defines "Purchased Assets" as:

- "[a]ll owned Real Property";

- "[a]ll furniture, fixtures, equipment, and spare parts, including, but not limited to . . . counters and signage; **all tanks, lines, pumps, and canopies**; . . . together with all replacements thereof and additions thereto";

- "[t]o the extent assignable and expressly assumed by Buyer, all rights and benefits of Seller under any applicable policy or policies covering any Environmental Liabilities of the Store and Real Property";

- "proceeds from any state [Leaking Underground Storage Tank] fund";

- [l]eases with operators"; and

- "[g]round leases."

*Id.* at pp. 25–26 (emphasis added). Confusingly, however, the APA also specifies that Magness did not intend to sell U.S. Assets "[t]hose items described on Schedule 4." Schedule 4 lists as excluded assets: "ANY AND ALL FUEL EQUIPMENT," including "all UST[s]," "Fuel Pumps," "Fuel Canopies," and "Fuel Brand Signage" "[l]ocated at all locations." *Id.* at p. 48. In short, Section 3.01 and Schedule 4 conflict with one another.

## II.  DISCUSSION

### A.  The Complaint Adequately States a Claim

Defendants first move to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Doc. 15, p. 2. The Court denies Defendants' Motion on this basis.

To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 663)). In ruling, the Court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).

Still, the complaint must contain sufficient facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do."

4

*Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### 1. Magness Plausibly States a Claim for Conversion

"Conversion is a common-law tort action for the wrongful possession or disposition of another's property." *McQuillan v. Mercedes-Benz Credit Corp.*, 331 Ark. 242, 247 (1998); *see also Hatchell v. Wren,* 363 Ark. 107 (2005); *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 817 (8th Cir. 2015). Under Arkansas law, the plaintiff must demonstrate "the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owners' rights." *Id.* "[T]he complaint must state that the plaintiff had a property interest in the subject goods and that the defendant wrongfully converted them." *Big A Warehouse Distribs. v. Rye Auto Supply*, 19 Ark. App. 286, 290 (1986).

Magness's conversion claim survives Defendants' Motion to Dismiss. The Complaint plausibly alleges, first, Magness's possessory right to the disputed equipment, and second, that by preventing Magness's access and use of that equipment, Defendants committed an act of dominion inconsistent with Magness's rights.

### a. Possessory Interest

Both parties claim the APA resolves the issue of ownership.[3] Magness argues it demonstrates Magness retained ownership; Defendants contend it demonstrates

---

[3] "Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). "The contracts upon which a claim rests are evidently embraced by the pleadings." *Id.* (alterations omitted) (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)).

Magness relinquished ownership. In reality, the APA contains two terms in direct conflict: section 3.01(b) indicates Magness conveyed the disputed equipment to U.S. Assets, while Schedule IV indicates Magness retained ownership of those same items.

"A motion to dismiss based on contractual language may be granted only where that language is unambiguous and conveys a definite meaning." *ESI, Inc. v. Coastal Power Prod. Co.*, 13 F. Supp. 2d 495, 498 (S.D.N.Y. 1998). Here, the contradictory terms contained in the APA render the contract ambiguous with respect to ownership, *see Ingram v. Century 21 Caldwell Realty*, 52 Ark. App. 101, 101 n.2 (1996) ("[A]mbiguity may arise by means other than indistinctness or uncertainty of meaning; for example, ambiguity may also result where the clear wording of conflicting clauses seem to indicate inconsistent results."), thereby precluding dismissal on that basis.[4]

Defendants raise two additional arguments. First, Defendants argue SCF is a Bona Fide Purchaser ("BFP"), a status that, they contend, defeats Magness's ownership claim; second, the USTs constitute "fixtures," and because Defendants own the real property upon which they sit, Defendants also own the USTs. But, regardless of the merits to these

---

[4] Defendants point to additional provisions within the APA as evidence of Magness's intent to convey the disputed equipment. For example, Article X states, in part: "Seller [Plaintiffs] will make commercially reasonable efforts to transfer to Buyer [U.S. Assets] its interest, if any, in the UST fund of the state in which the Real Property is located, as applicable, to the extent allowed by law if additional work is required in the future." (Doc. 2, p. 33). That same section also indicates Magness and U.S. Assets agreed "[Magness] is hereby released from, and [U.S. Assets] hereby assumes, all responsibility and liability regarding the presence in the soil, air, structures, and subsurface and surface waters, of materials or substances that have been or may in the future be determined to be toxic, hazardous, or the subject of regulation." *Id.* at pp. 33–34.

However, these provisions do not resolve the APA's ambiguity—at least not on a motion to dismiss pursuant to 12(b)(6). Moreover, even if the Court held the above provisions established Defendants as the proper owners of the USTs, that would not dictate ownership of the remaining disputed equipment, like signage.

claims, "[a] defendant does not render a complaint defective by pleading an affirmative defense[.]" *Jessie v. Potter*, 516 F.3d 709, 713 (8th Cir. 2008). Instead, as courts in the Eighth Circuit have noted:

> [T]he issue under Rule 12(b)(6) is whether a plaintiff has alleged sufficient facts, accepted as true, to state a plausible claim for relief. Whether a defendant will be able to raise a defense that may prevail over those facts is, in most instances, irrelevant, as a plaintiff is not required to disprove an affirmative defense in order to state a valid claim.

*Weems Indus., Inc. v. Teknor Apex Co.*, 540 F.Supp.3d 839, 852 (N.D. Iowa 2021). Only where "an affirmative defense is apparent on the face of the complaint . . . can [it] provide the basis for dismissal under Rule 12(b)(6)." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quotation marks omitted).

Under Arkansas law, to achieve BFP status, the purchaser must have (1) taken the disputed property in good faith, (2) for valuable consideration, and (3) without notice of prior interest. *See Walls v. Humphries*, 2013 Ark. 286, 7 (2013).

The Complaint here simply does not allege sufficient fact to establish SCF Funding is a BFP. Magness had no obligation to plead such facts, and the Court will not dismiss the Complaint on that basis. The same analysis applies with respect to fixtures.[5] The

---

[5] According to the Arkansas Supreme Court, to determine whether an article remains personal property or becomes a fixture, courts should consider the following factors: "(1) whether the items are annexed to the realty, (2) whether the items are appropriate and adapted to the use or purpose of that part of the realty to which the items are connected, and (3) whether the party making the annexation intended to make it permanent." *Oak Creek Inv. Properties, Inc. v. Am. Elec. Power Serv. Corp.*, 433 F. Supp. 3d 1096, 1104 (W.D. Ark. 2020) (quoting *Pledger v. Halvorson*, 324 Ark. 302, 305 (1996)).

Complaint does not—nor does it need to—state factual matter sufficient to assess whether or not the USTs constitute fixtures.[6]

### b. Wrongful Conversion

Defendants next argue Magness fails to state sufficient facts to support the inquiry's second prong—an act of dominion inconsistent with the owner's rights. According to Defendants, because SCF owns the disputed equipment, any conduct related to the equipment is definitionally consistent with the rights of the owner, i.e., SCF.

This argument misunderstands the tort. Conversion necessarily involves the property of another. Should the Court find Defendants own the disputed equipment, the Court's analysis will end. But should the Court find otherwise—that Magness is the proper owner—the inquiry then turns to whether Defendants "exercise[] control over the goods in exclusion or defiance of the owner's rights." *Brown v. Blake*, 86 Ark. App. 107, 117 (2004). Defendants may not relitigate ownership to prevail under this second element.

### 2. Magness Plausibly States a Claim for Tortious Interference with Contractual and Business Relationships

In Counts II and III, Magness alleges Defendants have tortiously interfered with contractual and business relationships. To prevail, Magness must prove:

> (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Vowell v. Fairfield Bay Community Club, Inc.*, 346 Ark. 270, 276 (2001). Furthermore, under Arkansas law, "the defendant's conduct [must] be at least 'improper.'" *Id.*

---

[6] The Court has no occasion to consider the merits of Defendants' arguments. It makes no assessment of whether SCF Funding is a BFP or whether the USTs constitute fixtures. Nor does it assess whether either of such findings would in fact defeat Magness's claim.

Magness's Complaint states sufficient factual matter to properly plead each element, thereby adequately stating a claim to relief. Magness alleges Defendants' conduct interferes in two sets of specific contractual relationships and business relationships: (1) Magness's long-term fuel agreements with store operators; and, (2) Magness's long-term agreements with fuel brand suppliers. In support of these allegations, Magness attaches several sample contracts to the Complaint, including a copy of an Operator Fuel Agreement, *see* Doc. 2, p. 71, and a Branded Distributor Marketing Agreement, *see id.* at p. 77. Magness also plausibly alleges Defendants possess knowledge of these contractual relationships. After U.S. Assets acquired ownership of the convenience stores, it adhered to the lease agreements with convenience store operators and allowed Magness to continue fulfilling its fuel distribution obligations at the various stations. It's reasonable to infer that when SCF acquired U.S. Assets, SCF was made aware of those leases and brand fuel agreements. Moreover, on April 21, 2021, Magness  sent a letter—attached to the Complaint—to Defendants expressly informing them of the agreements. *See* Doc. 2, p. 158.

The Complaint also asserts specific instances in which Defendants' conduct caused Magness to breach its contractual obligations, thereby damaging Magness's goodwill and reputation in the industry. *See* Doc. 2, p. 9. Magness alleges, for example, that Defendants changed the fuel pumps, canopies, and brand signage, causing Magness to breach its agreement with the brand fuel supplier Citgo. *See* Doc. 2, p. 160.

Finally, Magness alleges sufficient factual matter to find Defendants' conduct improper. Under Arkansas law, to evaluate "whether an actor's conduct in intentionally interfering with a contract or a prospective contractual relation of another is improper," the

9

following factors in Section 767 of the *Restatement (Second) of Torts* should be considered:

> (a) the nature of the actor's conduct,
> (b) the actor's motive,
> (c) the interests of the other with which the actor's conduct interferes,
> (d) the interests sought to be advanced by the actor,
> (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other,
> (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.

*K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 26–27, (2008). Moreover, "[t]he comments to the Restatement include several examples of 'improper' conduct for purposes of tortious interference, such as unlawful conduct (including violations of antitrust law), forms of economic pressure, or violations of recognized business practices." *J.D. Fields & Co. v. Nucor-Yamato Steel*, 976 F. Supp. 2d 1051, 1067 (E.D. Ark. 2013).

The Court does not view Defendants' decision to assert an ownership claim or dispute Magness's interpretation of the APA as itself improper. But "[t]he determination of whether the interference is improper is ordinarily left to the jury," *Hamby v. Health Mgmt. Assocs., Inc.*, 2015 Ark. App. 298, 3–4 (2015), and the facts alleged by Magness, "if true, could support a claim for tortious interference under Arkansas law and the Restatement." *Nucor-Yamato Steel*, 976 F. Supp. 2d at 1067. For example, Magness contends SCF improperly evicted existing store operators, *see* Doc. 2, p. 8, so that Mountain Express, which has made no commitment to purchase fuel products exclusively from Magness, may take over the stores, *see id.* at p. 10. Magness also asserts that SCF financed U.S. Assets's purchase of Magness's convenience stores in February 2019. To the extent Magness establishes the relevant parties fully understood the APA to exclude

the disputed equipment—and SCF, as financier, had full knowledge of that—a factfinder may conclude SCF's decision, for example, to bar Magness from the property and prevent access to the disputed equipment is improper.

Defendants refute all of the above as being factually untrue, lacking sufficient evidentiary support, or being legally impossible. But at this point in litigation, Magness has no obligation to either prove its allegations or anticipatorily address affirmative defenses. The Complaint must simply "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Magness's Complaint does so. For now, that is enough.[7]

## B. The Court Possesses Subject Matter Jurisdiction Over Magness's Claims

Defendants next argue the Court must dismiss Magness's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction. *See* Doc. 15, p. 2. Federal diversity jurisdiction requires the parties to be citizens of different states and the amount in controversy to exceed $75,000. 28 U.S.C. § 1332(a). Defendants contend Magness fails to demonstrate the necessary amount in controversy.

Federal courts will find the amount in controversy satisfied so long as a factfinder "could legally conclude . . . that the damages the plaintiff suffered are greater than $75,000." *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). A complaint that alleges the

---

[7] Defendants also argue Magness fails to establish a right to declaratory relief because it does not adequately allege a possessory interest in the disputed equipment. The Court addressed the fact that Magness does indeed plausibly allege as much in the context of the conversion claim. No further elaboration is necessary. Nor does the Court address Defendants' arguments regarding injunctive relief. Defendants' Motion focuses exclusively on Magness's right to temporary injunctive relief—an issue rendered moot when the Court denied Magness's TRO request on May 19, 2021.

jurisdictional amount in good faith "will be dismissed only if it appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Am. Fam. Mut. Ins. Co. v. Vein Centers for Excellence, Inc.*, 912 F.3d 1076, 1080–81 (8th Cir. 2019) (quotation marks and alteration omitted).

Magness's Complaint states "this is a civil action between citizens of different states where the amount in controversy exceeds $75,000." (Doc. 2, p. 3). Under each cause of action, the Complaint alleges certain damages caused by Defendants' conduct. It does not, however, attach specific dollar amounts to those damages. Defendants argue this lack of detail fails to satisfy the pleading standard, and Magness must further elaborate the bases for its damages claim. *See* Doc. 15, pp. 32–33.

A factfinder could legally conclude, based on the Complaint, Magness suffered damages in an amount greater than $75,000.[8] Magness alleges Defendants wrongfully possess the USTs, fuel pumps, fuel canopies, and fuel brand signage at nine disputed properties, thereby preventing Magness from supplying the disputed stores with fuel or satisfying their existing contractual obligations. While Magness does not quantify its

---

[8] Defendants' Motion to Dismiss does not specify whether it makes a facial or factual challenge to the Court's subject matter jurisdiction. Because Defendants do not seem to dispute the truthfulness of any statements in Magness's Complaint, the Court construes Defendants' Motion to be a facial challenge.

"In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks omitted). "In other words, the Court 'determines whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint and drawing all reasonable inferences in favor of the plaintiff.'" *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Engineers*, 279 F. Supp. 3d 846, 860 (D. Minn. 2017), modified, 2019 WL 1516934 (D. Minn. Apr. 8, 2019) (alterations omitted) (quoting *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005)).

losses, it is reasonable to infer the value of the disputed equipment dwarfs the amount in controversy threshold. And that is without considering the losses Magness alleges due to the disruption in its contractual relationships. Defendant made no attempt to argue—much less establish with legal certainty—that these losses would fall below $75,000. Thus, the Court will not dismiss this action for lack of subject matter jurisdiction.

## C. U.S. Assets is Not a Necessary Party

Finally, Defendants contend the Court must dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a party under Federal Rule of Civil Procedure 19.

Under Rule 19(a)(1), a nonparty is "necessary" if: (1) in the nonparty's absence, the court cannot accord complete relief among existing parties, Fed. R. Civ. P. 19(a)(1)(A); or (2) the nonparty possesses an interest in the litigation such that disposing of it in their absence may (i) impede the nonparty's ability to protect their interest, or (ii) leave an existing party at substantial risk of incurring inconsistent obligations, Fed. R. Civ. P. 19(a)(1)(B)(i)–(ii). If either prong is satisfied, the nonparty is a necessary one and should be joined if feasible. Fed. R. Civ. P. 19(a)(1).

Defendants assert the Court cannot accord complete relief among existing parties without the presence of U.S. Assets. The Court disagrees. "Third-parties are not necessarily required parties under Rule 19 merely because they are involved in conduct underlying a plaintiff's claims. If the defendant is independently liable for the plaintiffs' claims, the court may properly conclude that it can accord complete relief in the absence of such third parties." *Wilwal v. Nielsen*, 346 F. Supp. 3d 1290, 1309–10 (D. Minn. 2018). The present dispute boils down to a property tort claim. The Court must determine

whether Magness retained any possessory interest in the disputed equipment, and if so, whether tortious conduct occurred. The Court can resolve that dispute without joining U.S. Assets.

Defendants also contend that U.S. Assets holds evidence necessary to interpret the APA. *See* Doc. 16, p. 34. However, "[t]he question of whether or not an entity or individual should be a party to an action is something quite different from the questions and problems associated with obtaining evidence from such an entity or individual." *Cronin v. Adam A. Weschler & Son, Inc.*, 904 F. Supp. 2d 37, 42 (D.D.C. 2012) (quoting *Costello Publ'g Co. v. Rotelle*, 670 F.2d 1035, 1044 (D.C.Cir.1981)). While U.S. Assets may possess evidence relevant to this litigation, Rule 19 does not list this "as a factor bearing upon whether or not a party is necessary or indispensable to a just adjudication." *Id.* To the extent U.S. Assets is in custody, possession, or control of any evidence relevant to this dispute, the Court's subpoena power should make such evidence available to the parties.

Defendants further marshal this "evidentiary argument" to contend that failure to join U.S. Assets would subject Defendants to substantial risk of incurring inconsistent obligations. However, this reasoning merely repackages Defendants' first argument. Defendants assert, more or less, that without U.S. Assets, the information in U.S. Assets's possession will not come into evidence. Then, if the Court finds Magness to own the disputed equipment—without considering the absent evidence—the Court's decision will conflict with other contracts that apparently identify SCF as the lawful owner. First, as explained above, there is no reason to believe evidence in the possession of nonparties is unobtainable; that is one of the primary purposes for undertaking discovery. Second,

14

in the context of Rule 19(a), "inconsistent obligations" occur when "a party is unable to comply with one court's order without breaching another court's order concerning the same incident." *Am. Ins. Co. v. St. Jude Med., Inc.*, 597 F. Supp. 2d 973 (D. Minn. 2009). Defendants make no claim that such a risk exists here.

### III.  CONCLUSION

For the above reasons, **IT IS SO ORDERED** that Defendants' Motion to Dismiss (Doc. 15) is **DENIED.**

IT IS SO ORDERED on this 16th of March, 2022.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE